UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RANDALL NATHAN AKINS,

        Petitioner,

v.                                  Case Number 07-12420
                                   Honorable Thomas L. Ludington

JERI-ANN SHERRY,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

     Petitioner Randall Nathan Akins, presently confined at Chippewa Correctional Facility in Kincheloe, Michigan, has filed a pro se application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted in Macomb County Circuit Court of multiple firearm offenses and two counts of assault with intent to commit murder. He alleges that he is incarcerated in violation of his rights under the Fifth and Sixth Amendments to the United States Constitution. Respondent Jeri-Ann Sherry alleges in an answer to the petition filed through counsel that Petitioner's claims lack merit or are procedurally defaulted. The Court agrees that Petitioner is not entitled to the relief he seeks. Therefore, the habeas petition will be denied.

I.

     Petitioner was charged with committing nine crimes, including two counts of assault with intent to commit murder, one count of intentional discharge of a firearm into an occupied building, one count of intentional discharge of a firearm from a motor vehicle, four counts of possessing a firearm during the commission of a felony, and one count of malicious destruction of property. The

charges arose from an incident that occurred early on January 28, 2002, when

> a shot was fired into Wild Woody's bar where employees were closing up for the night. Randy Levinsky, the head of security at Wild Woody's, and Frank Sgroi, the establishment's owner, jumped into Sgroi's Lexus automobile and chased the perpetrator who left the area on a motorcycle. Levinsky testified that he and Sgroi had followed the motorcycle to try to obtain the license plate number. They thought a customer had been shot. While they were driving, they contacted the police about their location. In total, the Lexus was hit by four bullets as it followed the motorcycle.
>
> Levinsky testified that [Petitioner] was the shooter, and was able to identify him because Levinsky had assisted [Petitioner] in Wild Woody's earlier that evening after an altercation wherein [Petitioner] was hit with a beer bottle. Levinsky testified that when the motorcycle and Lexus turned onto Masonic Avenue, they were in close proximity to one another. Levinsky got a clear look at [Petitioner's] face when [Petitioner] raised the gun and shot at him.
>
> Robert [sic] Stringer was the driver of the motorcycle. He had been with [Petitioner] in Wild Woody's during the altercation earlier that evening. At trial, Stringer testified that he was driving the motorcycle when [Petitioner] shot at the Lexus. Stringer explained that, after the altercation earlier that evening, he and [Petitioner] went to Stringer's apartment. [Petitioner] wanted to go back to Wild Woody's bar because he was upset about an earlier altercation, and he wanted to reclaim items he had left in the coat check. [Petitioner] brought a gun with him when they returned to the bar, and when he left, [Petitioner] pulled the gun out and started shooting.

*People v. Akins*, No. 257772, 2006 WL 141679, at *1 (Mich. Ct. App. Jan. 19, 2006) (unpublished).

The trial court dismissed the malicious-destruction-of-property charge during trial, and Petitioner waived his rights to testify and to present witnesses in his defense. His defense was that he was defending himself and others and that the prosecution witnesses were not credible.

On July 15, 2004, a Macomb County Circuit Court jury found Petitioner guilty of two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, one count of intentional discharge of a firearm at an occupied building, Mich. Comp. Laws § 750.234b, one count of intentional discharge of a firearm from a motor vehicle, Mich. Comp. Laws § 750.234a, and four counts of felony firearm, Mich. Comp. Laws § 750.227b. The trial court sentenced Petitioner to four

concurrent terms of two years in prison for the felony-firearm convictions to be followed by concurrent prison terms of 285 to 960 months for each of the assault convictions and 29 to 48 months for each of the discharge-of-a-firearm convictions. The Michigan Court of Appeals affirmed Petitioner's convictions, and on September 26, 2006, the Michigan Supreme Court denied leave to appeal. *See People v. Akins*, 721 N.W.2d 215 (Mich. 2006).

Petitioner filed his habeas corpus petition on June 5, 2007. He alleges that the evidence at trial was insufficient to sustain his convictions for assault with intent to commit murder, discharge of a firearm from a motor vehicle, and the related felony firearm offenses. He further alleges that the trial court deprived him of his right of confrontation by preventing him from asking Rodney Stringer whether Stringer avoided life imprisonment by testifying against him.

## II.

Petitioner is entitled to a writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., majority opinion on Part II). A state court's decision is an "unreasonable application" of clearly established

federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

### III.

#### A.

Petitioner first alleges that there was insufficient evidence presented at trial to support his convictions for assault with intent to commit murder, discharge of a firearm from a vehicle, and the attendant felony-firearm convictions. The Michigan Court of Appeals found sufficient evidence to support the assault convictions and stated that there was overwhelming evidence of Petitioner's possession of a firearm during the commission of the underlying felonies. The Court of Appeals noted that Petitioner did not dispute the fact that he discharged a weapon from a motorcycle and endangered the safety of those riding in the Lexus. The court then concluded that the prosecutor met his burden of disproving Petitioner's self-defense theory.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). After *Winship*, the critical question on review of the sufficiency of the evidence to support a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

In Michigan, the elements of assault with intent to commit murder are: "(1) an assault, (2)

with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Lugo*, 542 N.W.2d 921, 927 (Mich. Ct. App. 1995). "Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense," *People v. Warren*, 504 N.W.2d 907, 908 (Mich. Ct. App. 1993 ), and the intent to kill may be inferred from the use of a dangerous weapon, *People v. DeLisle*, 509 N.W.2d 885, 893 (Mich. Ct. App. 1993).

A person is guilty of intentional discharge of a firearm from a vehicle if the individual "intentionally discharges a firearm from a motor vehicle, a snowmobile, or an off-road vehicle in such a manner as to endanger the safety of another individual . . . ." Mich. Comp. Laws § 750.234a(1). A person is not guilty of the offense if he or she "discharges a firearm in self-defense or the defense of another individual." Mich. Comp. Laws § 750.234a(3). "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999).

The evidence at trial established that Petitioner possessed a large, semi-automatic gun on the night in question and that he fired the gun multiple times at Randy Levinsky and Frank Sgroi while he was riding on a motorcycle or standing in the street. He does not deny shooting at the Lexus; instead, he maintains, among other things, that there was no evidence of an intent to kill Levinsky and Sgroi. He alleges that his conduct was merely recklessness or the result of an intent to intimidate and stop Levinsky and Sgroi from pursuing him.

The evidence at trial indicates that Petitioner did more than try to intimidate or stop Levinsky and Sgroi. He fired at the Lexus several times and hit it four times. Two bullets were removed from inside the car, and one bullet shattered the windshield six to eight inches from where Levinsky was

seated. The jury could have inferred from this evidence that Petitioner intended to kill Levinsky and Sgroi.

Petitioner contends next that he was upset from the altercation in the tavern and that the evidence supported a conviction of manslaughter at worst. "The elements of voluntary manslaughter are (1) the defendant must kill in the heat of passion, (2) the passion must be caused by an adequate provocation, and (3) there cannot be a lapse of time during which a reasonable person could control his passions." *People v. Sullivan*, 586 N.W.2d 578, 582 (Mich. Ct. App. 1998).

Rodney Stringer testified that Petitioner was struck with a bottle during an altercation inside the tavern on the night in question. He and Petitioner then went to Stringer's apartment where Petitioner acquired a gun. They returned to the tavern. Petitioner fired gunshots into the building and the two of them then left the area on a motorcycle. Shortly afterward they noticed that they were being followed by the Lexus, and Petitioner fired his gun at it.

The evidence, as summarized in the foregoing paragraph, suggests that there was a lapse of time between the altercation at the tavern and the subsequent chase. That period of time was sufficient for the jury to conclude that a reasonable person would have been able to control his passions. And because Petitioner claims that he did not know the occupants of the Lexus were associated with the tavern, the jury could have concluded that the shooting was not done in the heat of passion, which resulted from the melee at the tavern. Thus, the facts did not support a conviction for voluntary manslaughter. The shooting, if successful, would have been sufficient to charge Petitioner with murder.

Petitioner asserts next that the prosecutor failed to prove he did not act in self defense. Petitioner claims that he could not have safely retreated from the Lexus because the car continued

to pursue him.

Self defense or defense of others is established if the defendant (1) acted in response to an assault, *City of Detroit v. Smith*, 597 N.W.2d 247, 249 (Mich. Ct. App. 1999), and (2) "honestly and reasonably believe[d] that his life [was] in imminent danger or that there [was] a threat of serious bodily harm." *People v. Heflin,* 456 N.W.2d 10, 18 (Mich. 1990). "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v. Elkhoja,* 651 N.W.2d 408, 423 (Mich. Ct. App. 2002), *vacated in part on other grounds*, 658 N.W.2d 153 (Mich. 2003).

Even if the Court were to assume that Petitioner acted in response to an assault from Levinsky and Sgroi, he could not have honestly and reasonably believed that he had to use force to protect himself. Although the Lexus apparently came within a few feet of the motorcycle, there was no evidence that Levinsky and Sgroi were armed, and Stringer did not testify that he thought his life was in imminent danger. He merely claimed that he was frightened of the unknown. Furthermore, the fact that Petitioner got off the motorcycle once or twice and subjected himself to greater danger by standing in the street undermines the claim that he honestly and reasonably believed his life was in imminent danger. The Court concludes that the prosecutor sufficiently disproved Petitioner's theory of self defense and defense of others.

A rational juror could have concluded from the evidence, taken in the light most favorable to the prosecution, that Petitioner assaulted Levinsky and Sgroi, intended to kill them, and would have been guilty of murder if he had been successful. A rational juror also could have concluded that Petitioner intentionally discharged a gun from a motorcycle, thereby endangering the lives of Levinsky and Sgroi, and that he did not act in self defense or defense of others. Finally, a rational

juror could have concluded from Levinsky's and Stringer's testimony that Petitioner was armed with a gun during the assault on Levinsky and Sgroi and while discharging the firearm from the motorcycle. Therefore, the state appellate court's conclusion that the evidence was sufficient to support the jury's verdict did not result in an unreasonable application of *Jackson*.

B.

Petitioner's final habeas claim alleges that the trial court deprived him of his right of confrontation by not permitting him to elicit testimony that Rodney Stringer avoided the possibility of life imprisonment by testifying against Petitioner. Petitioner contends that the trial court committed reversible error when it limited him to eliciting only that Stringer faced "a significant amount of time" in prison if the prosecution was not pleased with his testimony.

Respondent argues that this claim is procedurally defaulted because Petitioner failed to raise the issue at trial and because the Michigan Court of Appeals reviewed the claim for "plain error." The Court need not address the alleged procedural default because the underlying claim lacks merit, and " 'federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits,' especially where the procedural default issue is 'complicated' and 'is unnecessary to [the] disposition of the case.' " *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The right to confront witnesses includes the right of cross-examination, *Douglas v. Alabama,* 380 U.S. 415, 418 (1965), and "the exposure of a witness' motivation in

testifying is a proper and important function of the constitutionally protected right of cross-examination," *Davis v. Alaska*, 415 U.S. 308, 316–17 (1974); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 51–52 (1987) ("[T]he right to cross-examine includes the opportunity to show that a witness is biased, or that the testimony is exaggerated or unbelievable.").

The Confrontation Clause, however, guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam). Thus, the Confrontation Clause is violated only if "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had . . . counsel been permitted to pursue his proposed line of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986). Because a state trial court possesses considerable discretion in limiting the extent of cross-examination, "the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory.'" *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (quoting *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989)).

Defense counsel was permitted to explain to the jury during his opening statement that Rodney Stringer initially was charged with assault with intent to commit murder and that he faced "hundreds of months in the Michigan Department of Corrections" and even life imprisonment if he were convicted. Defense counsel went on to say that Stringer bargained with the prosecution to get the charges dismissed. (Tr. July 13, 2004, at 153–54.) On the following day, the prosecutor objected to these remarks. The trial court then advised defense counsel not to suggest that Petitioner also was facing life imprisonment, because the jury was not permitted to consider the possible penalty. (Tr. July 14, 2004, at 4–6.)

During Stringer's subsequent testimony, the prosecutor elicited testimony that Stringer had pleaded guilty to malicious destruction of a building in return for the dismissal of two counts of assault with intent to commit murder, one count of discharge of a firearm at a building, and one count of discharge of a firearm from a vehicle. Stringer testified that he was sentenced to three years of probation. (*Id.* at 193–94.)

Defense counsel pursued the issue on cross-examination of Stringer. However, when he asked Stringer about the penalty for assault with intent to commit murder, the prosecutor objected and an unrecorded discussion followed among the attorneys and the trial judge. Defense counsel subsequently asked Stringer whether he faced "a significant amount of time" before he made his deal with the prosecutor. (*Id.* at 223.)

The Michigan Court of Appeals determined that the limitation which the trial court apparently placed on Petitioner's cross-examination of Stringer was supported by law. This Court agrees. The jury was made aware of Stringer's plea bargain with the prosecution and his potential bias. The prosecutor stated that Stringer was guilty of the same crimes as Petitioner because he was an aider and abettor, and the trial court explained to the jury that Stringer could be considered an accomplice, but was guilty of only malicious destruction of property and was promised that the other eight counts would be dismissed. (Tr. July 15, 2004, at 56 & 139–40.) Although defense counsel apparently was not permitted to mention that Stringer would have faced life imprisonment if he had not made a deal with the prosecution, the jurors were made aware that Stringer faced a significant amount of time in prison had he not pleaded guilty and testified against Petitioner.

The jurors had enough information, despite the limits placed on defense counsel's cross-examination of Stringer, to assess the defense theory that Stringer was not a credible witness. The

-10-

jurors would not have had a significantly different impression of Stringer's credibility had defense counsel been permitted to ask Stringer if he avoided life imprisonment by testifying against Petitioner. Therefore, Petitioner's right of confrontation was not violated.

## IV.

The state appellate court's decision in this case was not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**. Reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, nor conclude that the issues warrant encouragement to proceed further.

Accordingly, it is further **ORDERED** that a certificate of appealability is **DENIED**. *Banks v. Dretke*, 540 U.S. 668, 674 (2004).

Petitioner nevertheless may proceed *in forma pauperis* on appeal because the issues are arguable on the merits, not frivolous, and an appeal could be taken in good faith. Fed. R. App. P. 24(a)(4)(B); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 764–65 (E.D. Mich. 2002).

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: November 17, 2009

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 17, 2009.

s/Tracy A. Jacobs  
TRACY A. JACOBS